IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 11-3035-TUC-JGZ (HCE) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Tiffany Nicole Wilson, | ) | |
| Defendant. | ) | |

On November 18, 2011, Magistrate Judge Hector C. Estrada issued a Report and Recommendation on Defendant Tiffany Nicole Wilson's Motion to Suppress. (Doc. 38.) Magistrate Judge Estrada recommended that Defendant Wilson's Motion to Suppress (Doc. 16) be denied. On November 29, 2011, Defendant Wilson filed her Objection to the Report and Recommendation. (Doc. 41.) On November 29, 2011, the Government filed its Response to Defendant's Objection to the Magistrate's Report and Recommendation. (Doc. 42.) Upon independent review and for the reasons delineated herein, the Report and Recommendation is adopted.

## I. <u>STANDARD OF REVIEW</u>

The Court reviews *de novo* the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the unobjected-to portions of the Report and Recommendation. *Johnson v. Zema*

*Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F. Supp. 2d 1203, 1204 (D. Or. 1998).

## II. FACTUAL BACKGROUND

The factual background contained in Magistrate Judge Estrada's Report and Recommendation (Doc. 38) is adopted by reference herein.

## III. DISCUSSION OF DEFENDANT'S OBJECTIONS

### A. Grounds I and II

In *United States v. Martinez-Fuerte*, the Supreme Court held that permanent immigration checkpoints are constitutional. 428 U.S. 543, 556 (1976). At these checkpoints, a vehicle may be stopped and its occupants briefly questioned, even without any particularized suspicion that a vehicle contains illegal aliens. *United States v. Villamonte-Marquez*, 462 U.S. 579, 587 (1983) (citing *Martinez-Fuerte*, 428 U.S. at 545). Although the Supreme Court has not addressed the constitutionality of temporary immigration checkpoints, the Ninth Circuit has stated that temporary immigration checkpoints that are the functional equivalent of permanent checkpoints are constitutional and should be analyzed in the same manner. *United States v. Hernandez*, 739 F.2d 484, 487-88 (9th Cir. 1984).

The constitutionality of a checkpoint turns on its primary purpose, which is determined by identifying the independent administrative justification for the checkpoint and evaluating whether the scope of what is permissible under that justification is exceeded. *United States v. Soto-Camacho,* 58 F.3d 408, 412 (9th Cir. 1995). To determine the primary purpose of the checkpoint, courts have examined whether the procedure employed to stop each vehicle was routinely and evenly applied, whether the stop would be abusive and harassing because of officer discretion, and whether the appearance of authority of the officers at the checkpoint allayed the concerns of the lawful travelers. *See Soto-Camacho,* 58 F.3d at 411 and *Hernandez*, 739 F.2d at 487 (citing *Martinez-Fuerte*, 428 U.S. at 558-59). The Ninth Circuit has held that a seizure is reasonable under the Fourth Amendment when conducted at a clearly visible temporary checkpoint pursuant to a routine inspection of all vehicles for illegal aliens. *Soto-Camacho,* 58 F.3d at 411.

1    In this case, the evidence showed that the Three Points Border Patrol checkpoint
2    ("Three Points Checkpoint") is a clearly visible temporary checkpoint where each vehicle
3    is funneled through a single lane and uniformed border patrol agents are always present to
4    inspect vehicles for immigration violations. On August 7, 2011, Agent Romero worked as
5    the primary agent at the checkpoint where he was the first agent to greet and question
6    vehicles as they drove by. Agent Romero testified that the checkpoint consists of a canopy
7    station, cones which are lined up to direct vehicles through the checkpoint and signs to alert
8    traffic. The checkpoint is operated daily by uniformed border patrol agents. Agent Romero
9    testified that his primary purpose while working at the checkpoint was to conduct
10   immigration inspections. In June 2011, during his 45-day detail from New Mexico, Agent
11   Romero conducted immigration inspections at the Three Points Checkpoint approximately
12   once a week. He described his responsibilities at the checkpoint as essentially the same as
13   those in New Mexico - to conduct immigration inspections. Agent Romero explained when
14   he works at the checkpoint, he is looking for the same thing he looks for when he is
15   patrolling in a vehicle, the only difference at a checkpoint is that the vehicles approach you.

16   Defendant contends that the Three Points Checkpoint was operated as a pretext for
17   a drug search rather than a permissible checkpoint with a limited regulatory function. In
18   support, Defendant cites (1) Agent Romero's testimony that he was given no instructions
19   about how the particular checkpoint was to be operated and relied on his generalized
20   academy training on how checkpoints are run and (2) Agent Romero's inability to identify
21   any formal training or instructions that he received on how to run this specific checkpoint.

22   As an initial matter, Defendant's factual assertions are not supported by the record.
23   When Defense counsel asked Agent Romero if he had received any training specific to the
24   checkpoint, Agent Romero responded affirmatively. Agent Romero indicated he was
25   working with other agents and supervisors who had worked the checkpoint and that he knew
26   what to do on the date of Defendant's arrest because of his training and his experience
27   working the Three Points Checkpoint prior to Defendant's arrest. Although there was little
28   testimony as to how much discretion Agent Romero was given in conducting his immigration

responsibilities, as discussed below, there was no evidence that Agent Romero or any other agent exceeded the scope of what was permissible for detection of immigration violations at the Three Point Checkpoint - in this specific case or generally.

The Court rejects Defendant's argument that agents exceeded the scope of the immigration purpose of the checkpoint at primary inspection. After an initial stop of a vehicle at an immigration checkpoint, an agent may conduct brief questioning of the occupants of a vehicle without individualized suspicion. *Martinez-Fuerte*, 428 U.S. at 562. The seizure is constitutional so long as the scope of the detention is limited to a few brief questions concerning immigration, production of documents, and a visual inspection of the vehicle limited to what can be seen without a search. *Id.* at 558. Here, Defendant spoke with Agent Romero at the primary checkpoint for approximately one minute. During that time, Agent Romero asked Defendant and her passenger if they were U.S. citizens, where they were going, where they had traveled from, and if Defendant was a member of the Tohono O'odham Indian Nation. The initial questioning was clearly permissible in its scope and purpose.

**B. Ground III**

Defendant's third argument challenges the level of suspicion required to order a vehicle to secondary inspection and continued detention thereafter. Defendant contends that Agent Romero lacked any suspicion to order Defendant to secondary, and therefore the detention at secondary was unreasonable.

Where there is evidence that the referral to secondary is to continue an immigration investigation, an agent need not harbor an articulable suspicion even if ultimately the vehicle is searched for drugs. *United States v. Barnett*, 935 F.2d 178, 181-82 (9th Cir. 1991). In this case, the magistrate judge properly concluded Agent Romero was not satisfied with the Defendant's answers to his questions and therefore, could refer Defendant to secondary for further immigration questioning. Agent Romero testified that he directed Defendant to the secondary inspection area based on Defendant's responses to his questions, her nervousness and the passenger's failure to respond to his questions. Although Defendant claimed she had

dropped her brother off in Sells, she did not understand Agent Romero's question regarding the "T.O." - a reference to the Tohono O'odham Nation in Sells. Defendant was nervous and avoided eye contact. Moreover, Defendant's passenger failed to affirmatively respond to Agent Romero's inquiry as to her citizenship.[1]

While at secondary, Agent Romero asked Defendant for identification documents and asked further questions regarding her presence in the area. Although Defendant stated that she had traveled from her mother's house in Sells, Defendant could only provide vague directions, and Agent Romero believed she was being untruthful. She did not have identification. During the questioning, which lasted approximately five to ten minutes, Agent Romero noticed Defendant still appeared nervous. Because Agent Romero continued his immigration investigation at secondary, no suspicion was required to justify the extended detention.[2]

---

[1] Agent Romero and Agent Magsamen's testimony differed as to the time at which Agent Romero asked Agent Magsamen to retrieve his canine. Agent Romero testified that he requested the canine while Defendant was at secondary. Agent Magsamen testified that Agent Romero signaled him for the dog before Defendant left primary. Whether Agent Romero requested the canine at primary or secondary does not alter the analysis of the reasonableness of the detention because: (1) the evidence shows that the referral was warranted for continued immigration investigation, and (2) the canine was trained to discover concealed persons as well as drugs.

[2] Even if immigration questioning had ceased, Defendant's detention for a minimal period of time was permissible. A brief detention is permitted following valid immigration questioning so long as the government can make a "minimal showing of suspicion." *United States v. Taylor*, 934 F.2d 218, 221 (9th Cir. 1991). A driver's nervous behavior is sufficient to meet this standard. *See United States v. Preciado-Robles*, 964 F.2d 882, 884 (9th Cir. 1992) (driver's nervous demeanor during secondary inspection provided a basis for pursuing immigration inspection and requesting permission to search the car even after the driver and passenger produced valid immigration documents). In *Taylor*, the defendant was referred to secondary after displaying nervous behavior; he was questioned about his citizenship and consented to search of the trunk of his car. 934 F.2d at 219. Agents confirmed that the defendant was a U.S. citizen and no persons were found in the trunk, however, the defendant was detained for an additional minute while agents utilized a canine that indicated the presence of drugs. *Id*. The Court held that the continued detention was reasonable even after agents dispelled the existence of an immigration violation because agents made a minimal

**C. Ground IV**

Defendant asserts that Agent Romero was required to have an articulable suspicion to refer Defendant to secondary. For the reasons articulated above, this argument is without merit.

**D. Ground V**

Defendant objects to the magistrate judge's determination that the warrantless search of Defendant's vehicle was supported by her voluntary consent. Arrests or searches at immigration checkpoints must be justified by either probable cause or consent. *Martinez-Fuerte*, 428 U.S. at 567. Voluntariness is based on the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 224-25 (1973). Five relevant factors include: "(1) whether the defendant was in custody; (2) whether the arresting officer had drawn a gun; (3) whether *Miranda* warnings had been given; (4) whether the defendant was told he had a right not to consent; and (5) whether the defendant was told a search warrant could be obtained." *Preciado-Robles*, 964 F.2d at 885. "The fact that some of these factors are not established does not automatically mean that consent was not voluntary." *Id.* (quoting *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988)).

Agent Romero asked Defendant for permission to search the trunk; she acquiesced by stating, "yes, go ahead" and handed the agent the keys from the ignition. Defendant was neither placed under arrest nor told that she was under arrest. Rather, she was detained in her car by border patrol agents for five to ten minutes during their investigation. She was not handcuffed. Neither agent drew their weapon or made a show of force. She was not given *Miranda* warnings and, although she was not advised that she not required to give her

---

showing of suspicion. *Id*. at 221.

Agent Romero's further questioning of Defendant was also supported by minimal suspicion. Here, unlike *Taylor*, Agent Romero was still investigating Defendant and her passenger's legal status and possible involvement in alien smuggling. The dog was utilized while Agent Romero spoke with Defendant. Defendant's nervous behavior and ostensibly untruthful answers combined with the brief detention was sufficient to establish a minimal showing of suspicion.

consent, she also was not informed that if she did not consent, a search warrant would be obtained. The first, second and fifth factors favor the government; the third and fourth factors weigh in favor of Defendant. Under the totality of the circumstances, the Magistrate Judge properly concluded that Defendant's consent was voluntary, and therefore, the search of the vehicle's trunk was constitutional.

Defendant contends that the agents effectively coerced her consent because Agent Magsamen misled Defendant by loudly stating that the dog alerted, and Agent Magsamen "made sure that Ms. Wilson could hear that he said that his canine had 'alerted' to the trunk." (Doc. 41, p. 16). Defendant has no evidentiary support for this contention. Agent Magsamen testified that the dog alerted to Defendant's vehicle by sitting down, which is a trained behavior. (Magsamen at p. 100.) And he "let Agent Romero know that [the] dog had alerted and indicated the trunk of the vehicle." (*Id.*)[3] There was no testimony as to the volume or manner in which Agent Magsamen informed Agent Romero. Moreover, there was no suggestion that such a statement would have been misleading.

Because the Court concludes that Defendant's consent provided a proper basis to search the trunk, the Court does not address Defendant's remaining challenges to that search.

//

//

//

**IV. CONCLUSION**

Accordingly, IT IS HEREBY ORDERED as follows:

---

[3]Defendant suggests that Agent Magsamen's testimony regarding his dog's actions is not credible because his report mentions the dog's "alert," but not that the canine sat down or "indicated." Although Agent Magsamen may not be a skilled report writer, the omission in the report does not, in and of itself, undermine the Magistrate Judge's very detailed description of the testimony and his finding that the dog indicated in the manner in which Agent Magsamen testified.

(1) United States Magistrate Judge Estrada's Report and Recommendation (Doc. 38) is **accepted and adopted**.

(2) Defendant's Motion to Suppress (Doc. 16) is **denied.**

DATED this 12th day of January, 2012.

_____
Jennifer G. Zipps
United States District Judge